THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD M. CUN-
NINGHAM, Appellant, v. WILLIAM H. OSBORN and Others, as Com-
missioners of Highways of the Town of Tuxedo, Orange County,
New York, Respondents.

*User — not alone sufficient to constitute a public highway by prescription — chapter
568 of 1890.*

In order that a road should become a public highway its use must be asso-
ciated with some act, showing such use to be claimed as a right hostile to and
independent of the will of the owner, such as reparation or the assumption of
control of the road in some ostensible manner; and a private road opened by
the owners of land, through which it passes, for their own use, does not
become a public highway merely because the public are also permitted, for
many years, to travel over it.

Chapter 568 of the Laws of 1890 has wrought no change in the law relating to
highways by prescription.

The mere fact that a portion of the public travel over a road for twenty years
cannot make it a highway; the burden of making highways and sustaining
bridges cannot be imposed upon the public in that way. There must be more.
The user must be like that of highways generally. The road must not only be
traveled upon but must be kept in repair or taken in charge and adopted by
the public authorities.

APPEAL by the relator, Richard M. Cunningham, from a judg-
ment of the Supreme Court in favor of the respondents, entered in
the office of the clerk of the county of Orange on the 24th day of
December, 1892, upon the decision of the court, rendered at the
Orange Special Term, dismissing the alternative writ of mandamus
granted the relator, requiring the respondents to remove obstruc-
tions in a certain road.

*William D. Dickey*, for the appellant.

*Eugene D. Stokem* and *M. H. Hirschberg*, for the respondents.

DYKMAN, J.:

This proceeding was instituted for the procurement of a peremp-
tory writ of mandamus which should command the commissioners
of highways of the town of Tuxedo to remove the obstructions from
a certain road in that town which begins on the easterly side of a
road leading from Arden to Bailytown and terminates at a road
leading from Dunderburg to Cedar Pond.

An alternative writ was granted, to which the commissioners made a return, in which they stated that the road had not been used by the general public for twenty years and that they should not be required to remove the obstructions therein.

It appears from the papers used upon the application that the road in question runs through a wild gorge of the Orange mountains and was opened at first by the Greenwood Iron Company for its own use in carting charcoal to the furnace of the company. It was never laid out or opened as a public highway.

There was a trial before a judge of this court without a jury, and he decided against the relator.

It appeared upon the trial that the road in question runs through a wild mountainous region which is sparsely inhabited; that it is an ordinary wood road, and that there are from 50 to 100 miles of roads similar to this road in a tract of mountain land of about 10,000 acres.

The entire tract of land, including that over which this road passes, belongs to E. H. Harriman, who has owned it since 1886, and in the summer of 1892 he closed the road by placing a wire fence across it, and that is the obstruction of which the relator complains.

There is no claim on the part of the relator that the public authorities of the town ever adopted or recognized this road as a highway or made any highway assessments, or did any work upon it.

When Harriman acquired the property this road was impassable in many places, and he improved it, and in June, 1892, put up notices along the same warning the public against traveling thereon.

The trial judge found that the road had been used continuously for more than twenty years by people having occasion to travel between points reached thereby.

The evidence justifies the finding, and such use is all there is to clothe the road with a public character. That use alone is entirely insufficient to convert the road into a public highway by prescription, and there is no claim on the part of the relator that this road ever became a highway in any other manner.

The character of one of the mountain roads upon the same tract of mountain land was involved in the case of *Harriman* v. *Howe* (78 Hun, 280). That was an action brought by Harriman against the commissioners of highways to determine the character of the

road, and the proof of use there was substantially the same as it is here, and it was there decided by this court that proof of user alone of a road was insufficient to show it to be a public highway; that such use must be associated with some act showing such use to be claimed as a right, hostile to and independent of the will of the owner, such as reparation or the assumption of control of the road in some ostensible manner; that a private way opened by the owners of land through which it passes for their own use does not become a public highway merely because the public are also permitted for many years to travel over it. The case of *Speir* v. *Town of New Utrecht* (121 N. Y. 420) is an authority for these conclusions.

The reason and authority for our conclusion in that case are set forth with sufficient particularity and fullness, and the case is entirely decisive of this, with the exception of one point raised by the appellant, which we will now examine.

It is claimed in this case by the relator that section 100 of chapter 568 of the Laws of 1890, known as the General Highway Law, has wrought a change in the law of this State relating to highways by prescription, but we cannot yield our assent to this contention. We do not think that any such change was intended by the Legislature.

The language of the new section is this: "Highways by use.— All lands which shall have been used by the public as a highway for a period of twenty years or more shall be a highway with the same force and effect as if it had been duly laid out and recorded as a highway, and the commissioners of highways shall order the overseers of highways to open all such highways to the width of at least two rods."

The old statute was this: "All roads not recorded, which have been or shall have been used as public highways for twenty years or more shall be deemed public highways." (1 R. S. 521, § 100.)

The words "used as public highways," as they are employed in the old statute, received a construction in the case of *Speir* v. *Town of New Utrecht* (121 N. Y. 420), and it was there held, as we have seen, that they required more than mere user.

The words in the new statute are "used by the public as a highway," and they are of the same purport and meaning as the words of the old statute. The new statute requires the use to be by the

public, and the old statute required the roads to be used as public highways, and they can be used as public highways only by the public, and, therefore, the use required by both statutes is the same.

It is impossible to read the provisions of the two statutes in reference to the use of the roads which is necessary to create a right by prescription without observing the similarity between them down to the provision in the new statute for opening the roads. To that point the language in both has the same import and signification. Although the phraseology is slightly different, yet the requirements in relation to use by the public are the same in both.

But that does not exhaust the argument, and we must take a broader view of the subject. In the first place it is to be observed that wherever changes are made in the Highway Law of the State by the statute of 1890, they are all plainly specified, and if it had been the intention of the Legislature to make the radical change in the existing Highway Law for which the relator contends, such intention would have been expressed in unmistakable language.

A statute which would make mere user by the public of the mountain roads in this State by the few persons who have occasion to use them sufficient to constitute them public highways, with all the rights and obligations pertaining thereto, would effect a fundamental change in the Highway Law, and involve important and serious consequences. It would convert wood roads which have been used by persons in the vicinity for their convenience into public highways without compensation to the owners of the land, and be thus violative of the Constitution of the State, and it would devolve upon the towns the duty of their reparation, and render them responsible for injuries to persons and property by reason of defects and obstructions therein.

In this very case such a construction of the statute would place fifty miles of mountain roads in such a category. If the Legislature intended to enact a law which would involve consequences so serious, language would be used which would plainly express such intention.

Instead of that we have language employed in the new statute which plainly indicates an intention to re-enact the old statute in relation to the use necessary to constitute a prescriptive right to land for a public highway.

The following rule prescribed in the case of *Speir* v. *New Utrecht* (*supra*) is applicable to this case :

" But the mere fact that a portion of the public travel over a road for twenty years cannot make it a highway, and the burden of making highways and sustaining bridges cannot be imposed upon the public in that way. There must be more. The user must be like that of highways generally. The road must not only be traveled upon, but it must be kept in repair or taken in charge and adopted by the public authorities."

We think all this is implied in the words "used as public highways."

The judgment should be affirmed, with costs.

Pratt and Cullen, JJ., concurred.

Judgment affirmed, with ten dollars costs and disbursements.